Caruthers, J.,
delivered the opinion of the Court.
Oliver Towles died intestate, on the 8th of March, 1856, leaving the complainant his widow, and no children. His estate consisted of four or five slaves, an. inconsiderable personal estate besides, and a valuable tract of land near McMinnville, in Warren county, Tennessee. The personal estate, exclusive of the slaves, will fall short of paying the debts by a large amount— enough to take the proceeds of most of the slaves, and a petition is now pending by the administrator, John W., *602 to sell tbem for that purpose. So it is doubtful whether any thing will be left of the personal estate for the widow after settling up the debts. There are six heirs at law of the said Oliver, deceased, among whom is James Towles, who is entitled to one-sixth of the real estate. That has been sold in the Chancery Court at McMinnville, and the proceeds, amounting to about one thousand dollars, are now ip the hands of the clerk and master.
James Towles is a debtor to the estate to the extent of about $300, for which there is a judgment in favor of the administrator, on the 9th of June, 1857, which cannot be collected, as he is insolvent, and the execution returned no property found, the 27th of June, 1857. Now this petition was filed the 23d of March, 1857, by the widow, in the proceeding in the Chancery Court at McMinnville, for the sale of the land, in which she is a party, for the purpose of compelling the application of so much of the one-sixth of the land proceeds to which James is entitled, as heir to his brother, to the discharge of the said debt against him. The administrator, in his answer, concurs in the prayer of the petition, if it can be legally granted.
The difficulty presented is, that soon after the death of his brother, and before any proceeding was instituted to collect said debt, or sell the land, viz, the 17th of April, 1856, James sold and conveyed all his interest in the land to Arthur Towles and P. Gr. Swinney, for $773. At least that is the consideration expressed in the deed, which was registered in Warren county, on the day of its execution, the 17th of April, 1856.
These purchasers were not parties to the proceeding *603 for the sale of the land for partition; but came in by petition after the application of Mary Towles for the appropriation of the fund before stated, and by their said petition, and their answer to hers, set up their right and title to all the interest of James, in the fund, by virtue of their purchase and deed from him.
It is a little remarkable that they do not state what or how they paid James for this hasty conveyance made so soon after his brother’s death, but content, themselves with barely referring to the consideration stated in the deed, without showing that it was for money paid, a subsisting indebtedness, upon credit, or for other property. But it may be answered, that as there were no charges against them in her petition, they were not called upon to answer as to that matter, but it was enough to exhibit and stand upon their deed. This is so, but it would have been more satisfactory to have had some ’account of the particulars of the contract.
This is a question of some importance to . Mrs. Towles, as the loss of this debt will throw an additional burthen, to that extent, upon her slaves in the payment of the debts against the estate. And to that extent, of course, her distributive interest, being all the personalty remaining after the discharge of the debts, will be diminished. There would be no doubt of the right of the administrator to have this debt of $800, against James, paid out of his one-sixth of the proceeds of the land, if the right to it still remained in him. But although anxious to find some principle or authority to authorize it, we are not able to see how this debt to the estate could interpose any obstacles in the way of selling his interest in the land which had descended to *604 him as an heir of his brother. It was certainly no lien upon it, as it was not reduced to a judgment.
There was no question as to a collation of advancements, for it was not a case where that doctrine could apply. It is simply a case of indebtedness to the estate by a collateral heir, who is unable to pay except out of the lands descended to him, and he makes a disposition of that before it is, by any legal rule, bound for the debt.
A very plausible argument is made to the effect, that, as by the law this debt, as well as the other personalty, goes to the widow, and the land to the heirs, the debtor should be • bound to make it good before he can claim his inheritance from the same source. Or, that inasmuch as Oliver Towles was largely indebted, and that the slaves have to be sold to pay these- debts, it would be inequitable to allow James to convey away the real estate descended to him, and, by avoiding the payment of his debt to the estate, throw that much more weight upon the widow’s slaves. This would all be very palpable if it were not for the fact that the rights of purchasers have intervened before any steps to fix this debt upon, or in any way bind the land, were taken.
The widow, on failure of children, is much favored by our recent statute, making her sole distributee, and excluding all the next of kin from any participation in the personalty, no matter how much it may be. But this must be after the settlement of the estate by discharging all debts and expenses of administration. This-great change in her favor as to the personalty, leaves unimpaired her dower in the realty.
*605 If, however, these persons are not innocent purchasers? but obtained the conveyance without a fair consideration, or to enable James to avoid this debt, even upon full consideration, then their purchase and deed would interpose no difficulty in the way of an application by the administrator to subject the fund to this debt.
The consideration seems, as it has turned out, to be inadequate, but not to the extent to prove fraud of itself. But that circumstance, together with the time of the deed, so soon after the death, and the silence of the purchasers in their petition and answer as to the bona fides of their purchase, or the facts attending it, make out a proper case for further examination, if the parties desire it. The case will, therefore, be remanded, if the widow and administrator wish it, for the purpose of instituting an jnquiry, by proper pleadings, to investigate the transaction further. As the administrator is the creditor, it would seem that the petition should be by him, although it is the interest of the widow which is at stake.
The Chancellor having allowed the claim, the decree must be reversed, and the cause remanded.